UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY O. WILLIAMS,<br><br>   Plaintiff,<br><br>   v.<br><br>CORRECTIONAL OFFICER GOMEZ,<br><br>   Defendant.<br>_____/ | No. C 15-2967 NC (PR)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Docket No. 20 |

On June 25, 2015, Plaintiff Timothy O. Williams filed a *pro se* civil rights action under 42 U.S.C. § 1983 against Correctional Officer Gomez ("Defendant") at Salinas Valley State Prison ("SVSP"), where Plaintiff is incarcerated. After screening the complaint, the Court found that Plaintiff stated a cognizable Eighth Amendment claim that Defendant used excessive force against him.

Now before the Court is Defendant's motion for summary judgment. Plaintiff has filed an opposition, and Gomez has filed a reply. For the reasons given below, the motion is granted.

## BACKGROUND

The following facts are taken in the light most favorable to Plaintiff, and are undisputed unless otherwise indicated.

On September 4, 2014, Defendant was working as a floor officer in Facility C, Building 8, at SVSP. (Gomez Decl. ¶ 3.) Defendant, along with Correctional Officer C. Rebeterano and Correctional Officer D. Murphy, were conducting the pill-line release. (*Id.* ¶ 4.) During pill-line release, inmates are systematically called out of the cells pod by pod. (*Id.*) Control Booth Officer D. Ear electronically opens cell doors for the inmates who are to

receive medications. (*Id.*) At one point, Ear opened up Plaintiff and Inmate Robins' cell. (*Id.* ¶ 5.)

Both inmates exited their cells, but Plaintiff refused to participate in the pill-line, and Inmate Robins demanded a shower. (*Id.*) Rebeterano ordered both inmates to return to their cells because Rebeterano and the other officers were still conducting the pill line release. (Rebeterano Decl. ¶ 5.) Neither inmate complied with Rebeterano's order to return to the cell. (*Id.* ¶ 6; Gomez Decl. ¶ 6.) Instead, Inmate Robins became aggressive, and he insisted that he be allowed to shower. (Gomez Decl. ¶ 6.) Plaintiff put his arm around Inmate Robins and encouraged Inmate Robins to "lock it up," and return to their cell. (*Id.*)

Unfortunately, Inmate Robins continued to approach the officers. (*Id.* ¶ 7.) Murphy ordered both inmates to "lock it up," but neither complied. (*Id.*) Inmate Robins yelled, "Fuck you," and took a "bladed stance," and then struck Murphy in the face. (*Id.*) At that point, the alarm sounded. (*Id.*)

When the alarm sounds, inmates are required to stop what they are doing, sit down, and wait for instructions. (*Id.*) Neither inmate complied. (*Id.*) Inmate Robins continued his assault on Murphy, even after Murphy used his pepper spray in an attempt to stop the fight. (*Id.*) Soon after the fight began, Plaintiff also took a "bladed stance," and began to approach the fight. (*Id.* ¶ 8. ) Defendant ordered Plaintiff to get on the floor, but Plaintiff did not comply. (*Id.*) Defendant then sprayed Plaintiff with the pepper spray. (*Id.*) Plaintiff continued to advance, so Defendant and Rebeterano tried to restrain Plaintiff. (*Id.*) Rebeterano grabbed the back of Plaintiff's arm, but Rebeterano slipped and fell. (*Id.*). Plaintiff continued to resist, and Defendant used his body weight to force Plaintiff on the ground. (*Id.*)

Thereafter, Inmate Robins was issued a Rule Violation, and found guilty of battery of a peace officer. (*Id.* ¶ 15; Stegeman Decl, Ex. B.) Plaintiff was also issued a Rule Violation, and found guilty of willfully resisting an officer. (Gomez Decl. ¶ 15; Stegeman Decl. Ex. B.)

Plaintiff has filed this federal civil rights complaint, alleging that Defendant pepper sprayed him, and slammed him onto the ground "for no reason." Both parties have consented to magistrate judge jurisdiction.

## DISCUSSION

A.  Standard of Review

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e)).

For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the Court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The Court's function on a summary judgment motion is not to make

credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

B.  <u>Evidence Considered</u>

A district court may only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). Here, Plaintiff has not verified his complaint nor his opposition to Defendant's motion for summary judgment. That is, Plaintiff did not sign either document under penalty of perjury. Neither an unverified complaint nor unsworn statements made in the parties' briefs can be considered as evidence at this stage. *See Moran v. Selig*, 447 F.3d 748, 759 & n.16 (9th Cir. 2006) (noting that an unverified complaint cannot be considered as evidence on motion for summary judgment); *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978) ("[L]egal memoranda . . . are not evidence[.]"). Here, because Plaintiff's pleadings were not signed "under penalty of perjury," they cannot be considered as evidence for purposes of deciding this motion.

In a similar vein, although Defendant has submitted purported portions of Plaintiff's deposition transcript, the transcript is uncertified. (Stegeman Decl., Ex. A.) Defense counsel has averred that Exhibit A is a "true and correct copy of the relevant portions of the transcript," however, the declaration is insufficient without more to lay an adequate foundation for Plaintiff's deposition testimony. *See Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988); *United States v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970) ("A writing is not authenticated simply by attaching it to an affidavit, even if the writing appears on its face to have originated from some governmental agency. . . . The foundation is laid for receiving a document in evidence by the testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document and, where appropriate, its delivery."); *Steven v. Roscoe Turner Aeronautical*

*Corp.*, 324 F.2d 157, 161 (7th Cir. 1963) ("an uncertified copy of testimony is inadmissible in a summary judgment proceeding").

Therefore, Plaintiff's complaint and opposition, and Defendant's submission of portions of Plaintiff's deposition transcript will not be considered as evidence in the disposition of this motion.

C.   Analysis

Defendant moves for summary judgment on three grounds.  First, Defendant argues that Plaintiff's claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997).  Second, Defendant asserts that there is no genuine issue of material fact and he is entitled to summary judgment on the merits.  Third, Defendant alleges that he is entitled to qualified immunity.  Having reviewed the record and relevant pleadings, the Court agrees that Defendant is entitled to qualified immunity, and grants Defendant's motion for summary judgment on that basis.  As a matter of efficiency, therefore, the Court will not address Defendant's first two arguments.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determination of a deprivation first and then whether such right was clearly established, as required by *Saucier v. Katz*, 533 U.S. 194 (2001)).

A court determining whether a right was clearly established looks to "Supreme Court and Ninth Circuit law existing at the time of the alleged act." *Community House, Inc. v.*

*Bieter*, 623 F.3d 945, 967 (9th Cir. 2010). In the absence of binding precedent, the Court may look to all available decisional law, including the law of other circuits and district courts. *See id.* Unpublished district court decisions may also "inform" the Court's analysis. *See Bahrampour v. Lampert*, 356 F.3d 969, 977 (9th Cir. 2004).

The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993). "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (ellipsis in original) (internal quotation and citation omitted). But whenever prison officials stand accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *See Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Whitley*, 475 U.S. at 320-21; *Jeffers v. Gomez*, 267 F.3d 895, 912-13 (9th Cir. 2001) (applying "malicious and sadistic" standard to claim that prison guards used excessive force when attempting to quell a prison riot). In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 7.

The qualified immunity analysis is separate from the Eighth Amendment excessive force analysis. *See Marquez v. Gutierrez*, 322 F.3d 689, 691 (9th Cir. 2003). Thus, a guard can do an act which would violate an inmate's Eighth Amendment right but still be entitled to qualified immunity if a reasonable officer in his position would have believed that his response was a good faith effort to restore discipline. *See id.* at 692-93.

According to Plaintiff's complaint, Defendant sprayed him and slammed him to the ground "for no reason." However, Plaintiff's statements in his complaint are not evidence, and therefore, they cannot create a triable issue of material fact. *See Orr*, 285 F.3d at 773 (concluding that inadmissible evidence "do not present a triable issue of material fact"). Plaintiff does not provide any other admissible evidence to dispute Defendant's evidence. The record shows that after the alarm rang, Inmate Robins and Plaintiff failed to comply with the requirement to stop what they are doing, sit down, and wait for instruction. (Gomez Decl. ¶ 7; Rebeterano Decl. ¶ 7.) Instead, Plaintiff began to approach the fight between Inmate Robins and Murphy. (Gomez Decl. ¶ 8; Rebeterano Decl. ¶ 8.) Defendant ordered Plaintiff to stop and get down on the floor, but Plaintiff did not comply. (Gomez Decl. ¶ 8.) Defendant used his pepper spray on Plaintiff. (*Id.*; Rebeterano Decl. ¶ 8.) Plaintiff continued toward Defendant, and Rebeterano and Defendant grabbed Plaintiff to restrain him. (Gomez Decl. ¶ 8; Rebeterano Decl. ¶ 8.) Rebeterano slipped and fell, but Defendant kept his grip on Plaintiff and forced Plaintiff to the ground. (Gomez Decl. ¶ 8; Rebeterano Decl. ¶ 8.) Based on the undisputed evidence, Plaintiff has failed to establish that Defendant pepper sprayed Plaintiff and ultimately re-injured Plaintiff's pre-existing back condition "maliciously and sadistically" for the "purpose of causing harm." *Clement v. Gomez*, 298 F.3d 898, 903-04 (9th Cir. 2002). Thus, Defendant did not violate the Eighth Amendment.

Even assuming Defendant's actions violated the Eighth Amendment, based on the evidence, a reasonable officer in Defendant's position would have believed that his response was made in a good faith effort to restore discipline. *See Marquez*, 322 F.3d at 692-93; *see, e.g.*, *Clement*, 298 F.3d at 903-04 (finding no excessive force when officers dispensed a small amount of pepper spray several times into a cell to quell fighting between inmates); *Howard v. Nunley*, No. 10-17493, 2012 WL 35396, at \*\*1 (9th Cir. Jan. 9, 2012) (affirming grant of summary judgment based on qualified immunity when inmate was pepper sprayed after disobeying orders to stop pounding on his cell, and had received a warning that he could

be pepper sprayed) (unpublished memorandum disposition); *Stewart v. Stewart*, No. 01-17540, 2003 WL 463443, at \*\*1 (9th Cir. Feb. 20, 2003) (affirming dismissal for failure to state a claim and stating, "The administrators' alleged policy of spraying prisoners with pepper spray for refusing to follow directions falls within the wide-ranging zone of deference accorded to prison officials in shaping "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline.") (unpublished memorandum disposition); *Jennings v. Hays*, No. CV 10-8004-PCT-JAT (JRI), 2011 WL 1480038, at \*9 (D. Az. April 19, 2011) (granting summary judgment based on qualified immunity and stating, "[t]he law is unclear regarding the parameters of the permissible use of pepper spray to address inmates who disobey orders or interfere with officers in the performance of their duties."); *cf. Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979) (where, "after adequate warning," a prisoner acts in such a way to present "a reasonable possibility that slight force will be required," use of chemical spray "may be a legitimate means for preventing small disturbances from becoming dangerous").

Accordingly, Defendant is entitled to qualified immunity, and his motion for summary judgment is granted on this ground.

## CONCLUSION

Defendant's motion for summary judgment is GRANTED. The Clerk is directed to enter judgment for Defendant and close the file.

IT IS SO ORDERED.

DATED: May 25, 2016

NATHANAEL M. COUSINS
United States Magistrate Judge